## SARAH ZELMAN, PLAINTIFF, v. PENNSYLVANIA RAILROAD COMPANY, DEFENDANT.

Submitted March 20, 1919—Decided June 27, 1919.

1. In view of section 55 of our General Railroad law (*Comp. Stat.*, p. 4245) declaring that "if any person shall be injured * * * by jumping on or off a car while in motion, such person shall be deemed to have contributed to the injury sustained, and shall not recover therefor," the boarding or alighting from a moving railroad train is presumably and generally a negligent act *per se*, and in order to rebut this presumption and justify a recovery for an injury sustained in getting on or off a moving train it must appear that the passenger was, by the act of the defendant put to an election between alternative dangers, or that something was done or said, or that some direction was given to the passenger by those in charge of the train, or some situation created which interfered to some extent with his free agency, and was calculated to divert his attention from the danger, and create a confidence that the attempt could be made in safety.

2. A passenger upon a railroad, operated pursuant to the General Railroad act, who, as the train slowed down as it came into the station, and as the trainman called out "Park Place, last stop, Newark," arose, walked to the front of the car, following a passenger ahead of her, and finding the door open stepped off the moving train in the belief that it had stopped, cannot recover damages from the carrier for injuries sustained, by reason of the train being still in motion, since no act or direction of those having charge of the train interfered with her free agency or in any manner diverted her attention.

On defendant's rule to show cause why plaintiff's verdict should not be set aside.

Before GUMMERE, CHIEF JUSTICE, and Justices SWAYZE and TRENCHARD.

For the rule, *Vredenburgh, Wall & Carey.*

Contra, *Wilbur A. Heisley.*

The opinion of the court was delivered by

TRENCHARD, J.  The plaintiff below, a woman about twenty-seven years old, was injured while stepping from a moving train of the defendant railroad company at "Park Place" station, Newark, New Jersey (the train consisting of several steel cars, the doors of which were opened by pneumatic pressure and running between New York City and Newark).

A verdict was rendered for the plaintiff at the Essex Circuit, and the defendant obtained this rule to show cause why such verdict should not be set aside.

We are of the opinion that the trial judge should have directed a verdict for the defendant because the negligent conduct of the plaintiff contributed to the injury sustained, and also because of the absence of negligence upon the part of the defendant.

We are not concerned in this case with the rules governing similar accidents on street railways, the defendant railroad being operated pursuant to the General Railroad act. It is also to be observed that the accident in the present case was not caused by an insufficient stop, nor by starting after stopping, nor by a jolt or jar. In this case the train had not stopped at all but was moving at the rate of two or three miles an hour when the plaintiff stepped off. It was slowly moving without any unusual jolt or jar and came to a stop, at its usual stopping place, a few feet farther on.

Now, section 55 of our General Railroad law (*Comp. Stat., p.* 4345) provides, among other things, that "if any person shall be injured * * * by jumping on or off a car while in motion, such person shall be deemed to have contributed to the injury sustained, and shall not recover therefor any damages from the company owning or operating said railroad." Moreover, the general rule of law is that the boarding or alighting from a moving railroad train is presumably and generally a negligent act *per se,* and in order to rebut this presumption and justify a recovery for an injury sustained in getting on or off a moving train, it must appear that the passenger was, by the act of the defendant, put to an election

between alternative dangers, or that something was done or said, or that some direction was given to the passenger by those in charge of the train, or some situation created, which interfered to some extent with his free agency, and was calculated to divert his attention from the danger, and create a confidence that the attempt could be made in safety. *Powell* v. *Erie Railroad Co., 70 N. J. L.* 290; *Barcolini* v. *Atlantic City, &c., Railroad Co., 82 Id.* 107; *Ploeser* v. *Central Railroad of New Jersey, 92 Id.* 490; *Elger* v. *Boston Elevated Railway,* 226 *Mass.* 84; *Solomon* v. *Railway Co., 103 N. Y.* 437; *Mearns* v. *Central Railroad Co. of New Jersey,* 163 *Id.* 108; *S. C.,* 139 *Fed. Rep.* 543; *Hooker* v. *Blair,* 189 *Mich.* 278.

In the case at bar the plaintiff was in no unusual situation. She was in nowise interfered with, and, as we shall presently show, nothing was done or said by the trainmen to invite or direct her to step from the moving train.

The plaintiff testified that when the train "slowed down as it came into Park Place station," an employe on the car called out "Park Place, last stop, Newark;" that thereupon she arose, walked to the front of the car, following a passenger ahead of her, found the door open and stepped off, and as she stepped "felt" that the car was moving.

We think it was the duty of plaintiff to use reasonable care to ascertain that the train, once in motion, had come to a standstill before she stepped off. This she did not do. Her failure to thus inform herself was the proximate cause of the accident. She walked to the front of the car when the station was called out. There was nothing unusual in this. Nothing was done or said to lead the trainmen to suppose that she did not understand the situation, or that she was mistaken about the train coming to a stand, or that she was about to step off. Ordinarily, passengers have no difficulty in determining whether a train has stopped. She followed the man ahead of her and stepped off, apparently taking it for granted that the train had stopped, but making no effort by observation or otherwise to ascertain whether it had or not, as she might easily have done.

The action of the trainman in calling out "Park Place, last stop, Newark,"· and opening the door as the train was slowing up in the station, was not an invitation for the plaintiff to alight before the train stopped.

In *Elger* v. *Boston Elevated Railway* (1917), *226 Mass.* 84, the facts were very similar to those in the present case. There, as here, the car was equipped with pneumatic doors, which opened by sliding into a recess in ·the side of the body of the car and were operated by the trainman. On the night of the accident, after the signal to stop, the plaintiff and three other passengers walked to the rear end of the car. Her witness, one Dominey, who walked beside her, testified that when they got on the platform, the door was just sliding open, but the plaintiff said that the door was then in. She proceeded down two steps and to the ground, thinking, as she testified, that the car was at a stop. The trial court ruled that the plaintiff had as good an opportunity as the conductor to know that the car was moving, and that the conductor was under no duty to caution or warn her. A verdict was directed in favor of the defendant, which was affirmed on appeal. At *p.* 86 of the report the court said: "The main contention of the plaintiff is that the motorman was negligent because he opened the door before the car had come to a full stop. We should be slow to say, in these days of rapid transit, that the mere opening of a door before the car comes to a full stop, not done in violation of a rule of the defendant, could be considered evidence of negligence. See *Hannon* v. *Boston Elevated Railway,* 182 *Mass.* 425. But, aside from that, on the facts disclosed, the opening of the door and the announcement of the name of the next stop ·plainly did not warrant a finding that the plaintiff was invited to alight from a moving car. *England* v. *Boston and Maine Railroad,* 153 *Mass.* 490."

In the *Hannon Case, supra,* the court said (at *p.* 427 of the report) : "A little time must be consumed in unfastening and opening the doors. To hold that the guard outside shall not be .permitted to begin the process until the cars come to a complete standstill, would impose an unnecessary

and unreasonable restriction, whose effect would delay passengers and prolong the running time of the trains. Ordinarily there is no reason to anticipate danger from beginning to get ready the places of exit while the train is in the last part of its movement before coming to a full stop."

In *England* v. *Boston and Maine Railroad, supra,* a woman was a passenger upon a railroad train in the evening, when the brakeman opened and fastened back the door of the car and called out the name of her station. She passed out upon the platform, and, receiving no warning from the brakeman, stepped off while the train was still in motion and was injured. A verdict was directed in favor of the defendant, and, on appeal, it was affirmed. The court (at *p.* 492 of the report) said: "Assuming that the action of the brakeman in calling the station and fastening back the door was to be regarded as an invitation, it was clearly not an invitation to alight from a moving train, but from the train after it had come to a stop. It did not authorize the plaintiff to attempt to get off from the train when in motion. But we do not think that the action of the brakeman can, as a matter of law, be regarded as an invitation. It was, at the most, simply an announcement that the train was near the station, and would presently stop, and was given in order that the passengers intending to alight there might prepare themselves to do so when the train stopped. *Bridges* v. *North London Railway,* L. R., 6 Q. B. 377; *Lewis* v. *London, Chatham and Dover Railway,* L. R., 9 Q. B. 66. * * * The plaintiff acted on the belief that the train had stopped when it had not stopped, and this mistake was due to her own omission to use reasonable care."

In the *Bridges Case, supra,* the court (at *p.* 383 of the report) said: "The calling out the name of the station is not an act upon which such a person as the porter is to exercise a discretion whether he will do it or not. But just as there is a large board giving the name of the station, so (as the board may not be seen) the porter, when the train stops, calls out the name of the station for the information of the

passengers. It is not only information to those whose destination is the particular station that they have arrived at the end of their journey, but equally to those whose destination is farther on, that they have farther to go. In reality, the stopping of the train at the station is the invitation to the passengers to alight; for the passengers then have a right to expect that they can alight without danger, at the proper place for alighting. The announcement of the fact that the station arrived at is Highbury is no further invitation than the arrival itself. The passengers who are acquainted with the line, and know the stations, do not wait for the announcement and are not influenced by it."

*Mearns* v. *Central Railroad of New Jersey* (1900), 163 *N. Y.* 108, is a case also precisely in point. In that case the Court of Appeals of New York held: "A passenger upon a steam surface railroad, who, in the evening, as a vestibule train having the vestibule lighted, was nearing a station and the guard called out 'All out, Jersey City, last stop,' leisurely prepares himself to leave the train, waits a half a minute for it to reach the station building, and then, after the guard has opened the vestibule door and stepped across to the vestibule of the car ahead, proceeds out into the vestibule, and down the steps to the platform, in the belief that the train had stopped, although the guard gave him no warning or intimation to the contrary, cannot recover damages of the carrier for injuries sustained by reason of the train being still in motion, since no act or direction of those having charge of the train interfered with his free agency or in any manner diverted his attention." And the court said (at *p.* 111 of the report) : "Upon these facts the trial court dismissed the complaint, and, we think, properly."

The suit was afterwards commenced anew in the United States Circuit Court for the southern district of New York, and a verdict was directed in favor of the defendant in that court, which was affirmed in the Circuit Court of Appeals, Second Circuit. *Mearns* v. *Central Railroad of New Jersey,* 139 *Fed. Rep.* 543 ; 71 *C. C. A.* 331.

The court (at *p.* 545 of the report in 139 *Fed. Rep.*) said: "The statement of the porter was not an 'invitation' to alight, but was the usual announcement of a fact of interest to the passengers, namely that they had reached or were about to reach the end of their journey. The opening of the door of the vestibule did not warrant the inference that the car had stopped, but was only another act to facilitate the rapid and orderly egress of the passengers, after the train had stopped. * * * We cannot resist the conclusion that the deplorable accident which befell the plaintiff was attributable to his own lack of caution and was not due to the negligence of the defendant."

*Hooker* v. *Blair* (1915), 189 *Mich.* 278, is also directly in point. It was there held that: "A passenger who, on hearing the brakeman call a station, and seeing him open the vestibule door, left his seat and went to the platform, believing from the jar of the train that it had stopped, and attempted to alight from the steps of the moving car, in the darkness, was guilty of contributory negligence, and the receivers of the road were not chargeable with negligence for announcing the station before the train arrived there, or had stopped." A verdict in favor of the plaintiff was reversed. The court (at *p.* 288 of the report) said: "We do not think plaintiff did what a reasonably prudent man should have done before leaving the train, nor do we think negligence on the part of the railroad was shown. Upon both grounds a verdict should have been directed for the defendant."

The rule to show cause in the case at bar will be made absolute.