LESLIE POTTER, RESPONDENT, v. THE PENNSYLVANIA RAILROAD COMPANY, APPELLANT.

Submitted May 26, 1934—Decided September 27, 1934.

For the appellant, *W. Holt Apgar.*

For the respondent, *Franklin H. Berry.*

The opinion of the court was delivered by

PARKER, J.   The plaintiff was a passenger on a late train of the defendant company from New York to Asbury Park, leaving New York at twelve-ten midnight.  He and his brother and a friend were in the last car.  About two A. M., when the train stopped at Asbury Park, the party got out, on the east or left side, according to Charles Potter, and apparently had walked up to near the head of the train when the plaintiff recollected that he had left a pair of rubbers on the train; so he jumped on the nearest car platform next to the baggage car, and was engaged in making his way back toward the rear car where the rubbers were, when the train, having started, jolted or rocked, as he was passing from one car to another and threw him off to the west of the train.  The train was vestibuled, and the evidence indicated that the vestibule doors were all open on that side.  Plaintiff sustained a severe scalp wound and concussion of the brain.

The negligence charged in the complaint is failure to use proper care to have the cars, passageways, doors, platforms and connecting plates, with the appurtenances, in proper and safe condition for the use of passengers.  At a former trial there was a verdict for plaintiff, which on rule to show cause, was set aside.  Then the case went back for this second trial, at which the plaintiff had a verdict of $3,000, and the trial judge refused a rule to show cause, whereupon the defendant applied to the Supreme Court for a rule, and it was again refused by that court, as we are informed by the brief for appellant.

There are sixteen grounds of appeal, of which the first may be disregarded as merely charging general error.

The second is that the "judgment of the Supreme Court is contrary to the credible evidence given in the cause."  Under

this, counsel undertakes to review the whole evidence as though on a rule to show cause. Under the settled practice we are not concerned on this appeal with either the weight or the credibility of the evidence.

The third ground is abandoned.

The fourth ground is divided into four subdivisions, a, b, c and d. Subdivision a is that there was no evidence showing negligence. If a duty of care existed, we think there was such evidence. Subdivision d is that the court should have directed a verdict because the clear weight of credible evidence was with the defendant—which is substantially the same as the second ground just considered. It is urged that the appellate court should not hesitate to set aside a verdict on appeal as tantamount to an error in law. In like manner it is sometimes urged that the jury system be abolished. But the leadership in this is not for the courts. The argument is conspicuously weak in the present case, where there have been two successive verdicts for the plaintiff, and neither the trial judge nor the Supreme Court deemed it proper to interfere with the second, on which the judgment now under review is founded.

Subdivision b invoked section 55 of the Railroad act (*Comp. Stat., p.* 4245) relating to jumping off a car in motion. But whether plaintiff did this was a disputed question of fact. Subdivision c is that plaintiff violated section 39 of the act (*Comp. Stat., p.* 4240) by going on the platform notwithstanding the printed regulation posted up inside the cars, and reading "passengers must keep off the platform until the train stops." With this may be considered the refusal to charge the fifth, thirteenth, fourteenth, and perhaps other requests of defendant, that in effect the company was not liable if plaintiff disregarded the notice. This seems to be the crux of the case: for if defendant owed a duty of care it became a jury question whether under the circumstances of the case there was negligence in leaving open the vestibule on the side opposite to the station building and opposite to that on which the plaintiff had alighted and reboarded the train. The trial judge held that a duty of care might be found to

have existed, for he told the jury that he was not able to say that the statute (*i. e.,* section 39) applied to the case, because the train was a vestibuled train, "and it may be fairly said that vestibuled trains are provided for the safety of passengers, particularly in passing from one car to another, but, whether that be so or not, if the company provided such a train, no matter what the notice may have been, then it was under the duty of exercising a high degree of care to see that such train was kept in proper condition for the safety of its passengers." The case nearest to this on the facts is *Rivers* v. *Pennsylvania Railroad Co.,* 80 *N. J. L.* 217; *reversed,* 83 *Id.* 513; but that case does not seem to be absolutely in point, because the passenger claimed that he was looking for a seat, although the train was about to enter the Jersey City terminal, and this court held that he was within the *proviso* of section 39. Of course, it is true as a practical matter that the vestibules of trains are largely for the very purpose of insuring against passengers being thrown off when passing from car to car. In fact, the custom is general of passing from car to car for any legitimate purpose. Take, for example, a through train with a dining car attached. The passengers have to go to the dining car and often have to traverse half a dozen cars or more in order to reach it. We incline to say that the vestibule of a train, while not to be regarded as an invitation to a passenger to move around unnecessarily, is intended as a protection to a passenger having a legitimate reason for going from one car to another, as this man had if his story is to be believed; and that whatever may be said of the propriety of keeping the vestibules open on the side of the train toward the station, the jury could well say it was negligent to leave the vestibule open on the other side from the station.

Along with ground 4 counsel joins several other grounds, all of which are covered by what has been already said.

Ground 15 is that the court should have charged the following request:

"If you find the plaintiff's testimony is false in one or more particulars, you have the legal right to reject it all, and apply

the legal maxim 'false in one—false in all,' and *should so do* in this case." This is vitiated by the last clause.

Ground 16 points to no judicial ruling, and calls for no consideration.

The judgment will be affirmed.

*For reversal*—None.